IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BITMAN TECHNOLOGIES GEORGIA LIMITED,<br><br>Plaintiff,<br><br>vs.<br><br>JWKJ TECHNOLOGIES LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  No. 4:24-cv-00927-HEA<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS AND COMPEL ARBITRATION**

Defendant JWKJ Technologies LLC ("**Defendant**"), by and through its attorneys Dentons US LLP, states the following for its Memorandum in Support of its Motion to Dismiss and Compel Arbitration:

**INTRODUCTION**

In contravention of both the parties' Agreement and applicable law, Plaintiff Bitmain Technologies Georgia Limited ("**Plaintiff**") has impermissibly filed suit against Defendant in this Court for claims that must be arbitrated. While Defendant disputes Plaintiff's allegations and maintains that Plaintiff did not properly terminate the parties' Agreement, this Court is not the proper forum to hear or decide any of Plaintiff's claims. Rather, this Court should compel arbitration in accordance with Section 16.4 of the parties' negotiated Agreement, and Plaintiff's claims should be dismissed.

The arbitration agreement the parties agreed upon unambiguously provides that *"[a]ll disputes arising under this Agreement shall be submitted to arbitration*." (emphasis added). Such broad language unquestionably encompasses Plaintiff's claims in the instant action, particularly

when considering that the governing Federal Arbitration Act ("**FAA**") has a strong policy favoring arbitration. In fact, all doubts must be resolved in favor arbitration. To the extent Plaintiff asserts that its request for injunctive relief and non-contractual claims are not subject to arbitration, the Agreement and relevant case law provide otherwise because Plaintiff's claims relate to the Agreement's terms and the parties' contractual relationship. Even if Plaintiff could raise a genuine arbitrability issue, which it cannot, arbitration is the mandatory forum for this dispute.

## FACTUAL BACKGROUND

On or about March 1, 2023, Plaintiff and Defendant entered into a Service Framework Agreement (the "**Agreement**") whereby Defendant agreed to provide Plaintiff a Data Center Facility[1] for Plaintiff to run bitcoin mining machines known as Hosted Servers. (The Agreement is attached hereto as **Exhibit A** and incorporated herein by reference).

Most importantly, the Agreement contains a broad arbitration provision in Section 16.4:

> Dispute Resolution. ***All disputes arising under this Agreement shall be submitted to arbitration in Houston, Texas before a single arbitrator of the American Arbitration Association ("AAA")***. The arbitrator shall be selected by application of the rules of the AAA, or by mutual agreement of the parties, except that such arbitrator shall be an attorney admitted to practice law in the Relevant Jurisdiction. No party to this agreement will challenge the jurisdiction or venue provisions as provided in this section. Nothing contained herein shall prevent the party from obtaining an injunction. The breaching Party shall bear the attorney fees and arbitration fees of the non-breaching Party. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY. (emphasis added).

Despite the Agreement's express arbitration provision, Plaintiff filed a five-count Complaint and Motion for Temporary Restraining Order and Preliminary Injunction against Defendant in this Court on July 8, 2024, seeking redress for alleged claims relating to the

---

[1] Capitalized terms used herein shall have the same meaning ascribed to them in the Agreement.

Agreement and the parties' contractual relationship.[2] (*See* Dkt. 1; Dkt. 3). The crux of Plaintiff's allegations is that Defendant breached the Agreement by not allowing Plaintiff access to Defendant's Data Facility to remove its Hosted Servers and by redirecting the Hosted Servers to mine for its own benefit. (*See id.*). The Court scheduled a hearing on Plaintiff's request for a TRO on July 15, 2024, but as explained below, a substantive hearing on the merits should not proceed because all of Plaintiff's claims must be submitted to arbitration. For the reasons provided herein, the Court should dismiss this action and compel arbitration as required under Section 16.4 of the parties' Agreement.

## ARGUMENT

**I.    The FAA Mandates Arbitration Based on the Parties' Broad Arbitration Agreement**

   **A.    The FAA Governs**

The FAA governs the arbitrability of this matter and permits a party to compel an opposing party to submit to arbitration of a dispute. 9 U.S.C. § 4. The Agreement between Plaintiff, a Georgia corporation, and Defendant, a Florida company, for the provision of space to run servers for the mining of Bitcoin at a facility in Missouri[3] undisputedly meets the FAA's requirement of "involving commerce." 9 U.S.C. § 2.

The FAA applies unless the parties clearly evidence that state arbitration law applies. *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 729 n.9 (8th Cir. 2001) ("The construction of an agreement to arbitrate is governed by the FAA unless the agreement expressly provides that state law should govern."). No such clear evidence is present here. (*See generally* Ex. A).[4] While the Agreement contains a general choice of law provision identifying Georgia as

---

[2] Each of Plaintiff's claims are more fully analyzed below.
[3] Plaintiff admits these facts in its Complaint. (Dkt. 1 at ¶¶ 1-2, 8).
[4] Notably, nowhere in the Agreement's choice of law provision or arbitration provision does it indicate that any state's procedural arbitration laws apply. (*See* Ex. A at §§ 16.3, 16.4).

3

the "Relevant Jurisdiction" (Ex. A at § 1.1 (p. 6), § 16.3),[5] such a provision is insufficient evidence of an intent to apply state arbitration law rather than the FAA. *Id.; Infinity Fulfillment Group, LLC v. Cenveo Corp.*, 2015 WL 3823166, at *5 (E.D. Mo. June 19, 2015) ("The Agreement[]…makes no specific reference to Missouri's Arbitration Act or Missouri arbitration case law on the matters, which does not disclose an abundantly clear intent by the parties to proceed under Missouri's arbitration provisions rather than the Federal Arbitration Act.").

Even if Georgia's Arbitration Code (or Missouri's Arbitration Act) applied, the result here would be the same because each states' law favors arbitration and compels arbitration when an arbitration agreement covers the claims at issue, as is the case here. *See* Ga. Code Ann. § 9-9-6; *Helms v. Franklin Builders*, 305 Ga. App. 863, 865 (2010) ("By enacting the [Georgia Arbitration Code], the Georgia General Assembly has established a clear public policy in favor of arbitration."); *see also* Mo. Ann. Stat. § 435.355; *Ellington v. Motors*, 560 S.W.3d 72, 76 (Mo. App. E.D. 2018) (The Missouri Arbitration Act "[e]xpress[es] the liberal policy of enforcing arbitration agreements as a matter of law to further the important public policy of resolving disputes without resort to the courts.").

### B.   The Court's Inquiry Under the FAA

In reviewing motions to compel arbitration under the FAA, courts consider "only issues relating to the making and performance of the agreement to arbitrate." *Koch v. Compucredit Corp.*, 543 F.3d 460, 463 (8th Cir. 2008). Because arbitration is a matter of contract, a court's sole inquiries are (1) whether a valid arbitration agreement exists, and (2) whether the dispute falls within the parties' prior agreement to arbitrate. *Id.* If a valid arbitration agreement covers the

---

[5] The Agreement also contains provisions specifying that Missouri tax law applies (Ex. A at § 1.2(vii), Appendix I at § 3.4). But the provisions expressly relating to tax matters fail to evidence any intent for Missouri arbitration law to apply.

4

dispute, the Court has no discretion, but rather is mandated to cease the court proceedings immediately and order arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (finding the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (same).

Here, Plaintiff has admitted it is a party to the Agreement, which contains an arbitration provision. (Dkt. 1 at ¶¶ 20, 61) (asserting the Agreement is a "valid and enforceable contract."). Therefore, the only question for the Court is whether the dispute falls within the scope of the arbitration provision. The answer is a resounding yes.

      **C.**    **The Entire Dispute Falls Within the Scope of the Arbitration Agreement**

           **1.**    <u>The Presumption of Arbitrability and Impact of the Parties' Broad Arbitration Agreement</u>

The FAA establishes "a strong national policy in favor of arbitration." *Dominium Austin Partners*, 248 F.3d at 727. Accordingly, where the parties have entered into an agreement to arbitrate, as is the case here, it creates a presumption in favor of arbitrability, such that any doubts regarding whether the dispute falls within the arbitration agreement are resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Put another way, the arbitration agreement must be "construed liberally," and need only be "susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm'ns Workers of America*, 475 U.S. 643, 650 (1986); *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008). Further, courts routinely find that all disputes between the parties are arbitrable when the arbitration agreement

5

includes broad language covering "any" or "all" disputes—as the arbitration provision does here. *See PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 837 (8th Cir. 2010) (holding an arbitration clause covering "all disputes arising under" the agreement was "generally broad" in scope, and that arbitration must be compelled because the factual allegations "simply touch[ed] matters covered by the arbitration provision").

### 2. All of Plaintiff's Claims Are Subject to the Broad Arbitration Provision

Given the breadth of the arbitration provision—which provides: "all disputes arising under this Agreement shall be submitted to arbitration"—and the presumption in favor of arbitrability, Plaintiff cannot deny that all of its claims are arbitrable. (*See* Ex. A at § 16.4).

**Count I** of Plaintiff's Complaint seeks a declaratory judgment, based on the Agreement and Defendant's alleged breaches thereof, declaring that it is the owner of the Hosted Servers and is entitled to unfettered access to the Data Center Facility. (Dkt. 1 at ¶¶ 25, 29, 34-36, 51-58). Plaintiff admits that both of these purported "rights" arise from the Agreement. (Dkt. 1 ¶¶ at 26, 29, 54). Therefore, Count I unquestionably arises under the Agreement.

**Count II** alleges that Defendant breached the Agreement in multiple ways. (Dkt. 1 at ¶¶ 59-64). A breach of contract claim, by its very nature, must arise out of the Agreement and fall within the scope of the Agreement's arbitration provision.

**Count III** alleges the Missouri[6] state law tort of conversion for Defendant's alleged conduct in refusing to return Plaintiff's Hosted Servers and redirecting the machines to mine Bitcoin for its own benefit. (Dkt. 1 at ¶¶ 65-73). Critically, labeling this claim as a tort has no

---

[6] Counts III, IV, and V of Plaintiff's Complaint are perplexing because they are based on Missouri law, but the Agreement's choice of law clause provides that ***Georgia*** law generally applies, while Missouri law only applies for tax-related matters. (Ex. A at §§ 1.1 (p. 6), 1.2(vii), 16.3, Appendix I at § 3.4). Therefore, Defendant questions the propriety of these claims as a threshold matter. Regardless, the determination of whether these claims are properly asserted is the province of the arbitrator.

6

impact on its arbitrability here because "[b]roadly worded arbitration clauses . . . are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement." *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005); *see also PRM Energy,* 592 F.3d at 837 ("It generally does not matter that claims sound in tort, rather than contract . . . [Plaintiff's] tort claims are 'disputes arising under' the [] Agreements and are therefore within the scope of the broad arbitration clause."); *Gregory v. Electro– Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) ("The structure of the complaint and the allegations of fact reflect that these claims all arose under the agreement . . . every count incorporates all of the facts alleged in the count denominated as a breach of contract claim.[7] Thus, the complaint itself says that the facts constituting defaults under the contract are a critical part of the so-called tort claims.").

Indeed, Count III is inextricably intertwined with the parties' contractual relationship in "touch[ing] matters covered by the arbitration provision." *PRM Energy,* 592 F.3d at 837. In addition to alleging the Agreement governs its ownership rights in the Hosted Services (Dkt. 1 at ¶ 26), Plaintiff expressly contends that (1) "[Defendant's] redirection of the Hosted Servers constitutes a severe and continuous breach of the [Agreement]"; and (2) "[Defendant's] conduct constitutes tortious conversion, violating Section 6.6 of the [Agreement]." (Dkt. 1 at ¶¶ 35, 37).

The Agreement's arbitration clause conspicuously provides that the parties have agreed to "WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, ***WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY***." (Ex. A at § 16.4) (emphasis

---

[7] Likewise, here, Plaintiff's Count III (and Counts IV and V for that matter) incorporate the breach of contract allegations by reference. (Dkt. 1 at ¶¶ 65, 74, 80).

7

added). The clear intent of this language, taken together with the mandatory arbitration provision in this same paragraph, is that the parties have waived and are precluded from asserting torts, and "any other" types of claims, in court. This provision would lose all meaning if Plaintiff was permitted to file tort and other claims relating to the parties' contractual relationship in court. *See HM Compounding Servs., LLC v. Express Scripts, Inc.*, 349 F. Supp. 3d 781, 788–89 (E.D. Mo. 2018) ("In interpreting a contract, the Court considers the document as a whole, giving the words contained therein their ordinary meaning . . . and avoids an interpretation that renders other provisions meaningless."); *see also Eddleman v. PetVet Care Centers (Georgia), LLC*, 2023 WL 9181578, at *13 (N.D. Ga. Nov. 6, 2023) ("Under Georgia law, courts construe a contract in a manner that does not render any of its language meaningless or mere surplusage."). For all these reasons, Plaintiff's conversion claim is subject to arbitration.

*Count IV*, which alleges a Missouri statutory claim for tampering with computer data (Dkt. 1 at ¶¶ 74-79), and *Count V*, which alleges a Missouri Uniform Trade Secrets Act claim (Dkt. 1 at ¶¶ 80-90), follow the same analysis as Count III. Although pled as statutory claims, the allegations underlying these claims relate to the parties' contractual relationship and arise from the same set of facts as Plaintiff's breach of contract claim. *See Leonard v. Delaware N. Companies Sport Serv., Inc.,* 861 F.3d 727, 730 (8th Cir. 2017) (compelling arbitration of statutory minimum wage claims because they "touch[ed] matters covered by the arbitration provision."). Both Count IV and Count V harken back to Defendant allegedly using the Hosted Servers for itself, which Plaintiff alleges is a breach of the Agreement. (*See* Dkt. 1 at ¶¶ 35, 37).

The inescapable conclusion is that each and every claim Plaintiff asserts is covered by the arbitration agreement. Conversely, there is no possibility that Plaintiff could prove "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

8

dispute" in order to avoid arbitration. *See AT&T Tech.*, 475 U.S. 643, 650 (1986). Because Plaintiff's claims fall within the scope of the broad arbitration provision, the Court must immediately compel arbitration under the FAA. *See Dean Witter Reynolds*, 470 U.S. at 217.

## II. Plaintiff Can Seek the Relief it Desires in Arbitration

### A. The Reference to Injunctive Relief in the Agreement's Arbitration Provision Does Not Negate the Arbitrability of Such Claims

Defendant anticipates that Plaintiff will rely on language in the arbitration provision that provides "nothing contained herein shall prevent the party from obtaining an injunction" to argue that this Court can adjudicate its request for injunctive relief. (Ex. A at § 16.4). As demonstrated below, however, such an interpretation improperly disregards the plain language of the Agreement and forces the inclusion of key words (such as "court" or "litigation"), which are conspicuously absent from the dispute resolution provision in the Agreement. Such a reading would also undermine Defendant's bargained for agreement to arbitrate "all disputes" with Plaintiff. *See Dean Witter Reynolds*, 470 U.S. at 217 (holding that the FAA "requires courts to enforce the bargain of the parties to arbitrate.").

Undisputably, the reference to injunctive relief is contained in the Agreement's ***arbitration provision*** and makes ***no*** mention of the parties having a right to submit such a request for relief to any court. The natural result is that this language is simply confirming that the parties are entitled to injunctive relief in arbitration, consistent with the AAA Rules permitting injunctive relief (including, without limitation, emergency injunctive relief).[8] This interpretation is reinforced by

---

[8] Rule 38(a) ("Interim Measures") of the AAA Commercial Arbitration Rules provides that: "The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods." Additionally, Rule 39 ("Emergency Measures of Protection") outlines the requirements for seeking and granting emergency relief in a AAA arbitration. (The AAA Commercial Arbitration Rules are attached hereto as **Exhibit B** and incorporated herein by reference).

9

the fact that injunctive relief is specifically addressed in Section 13.1 of the Agreement, which provides no indication that the parties may seek relief in any court. (*See* Ex. A at § 13.1 ("Injunctive Relief")). Indeed, no provision in the Agreement indicates that injunctive relief claims are different than all other claims such that they are not subject to arbitration. (*See* Ex. A). The Agreement makes clear that ***"[a]ll disputes arising under this Agreement*** shall be submitted to arbitration," and consistent therewith, it acknowledges that injunctive relief is available (as such relief is available in arbitration pursuant to the AAA rules). (*See id*. at § 16.4 (emphasis added); Ex. B. at Rules 38-39).

Defendant's contractual interpretation is further reinforced by established precedent finding that disputes involving requests for injunctive relief must be submitted to arbitration just like all other claims subject to an arbitration agreement. *See e.g., Diabetic Care RX, LLC v. Express Scripts, Inc.*, 2018 WL 3643550, at *3 (E.D. Mo. Aug. 1, 2018) (granting the defendant's motion to compel arbitration and dismissing the temporary restraining order because there was an arbitration clause in the applicable contract); *Kane Int'l Corp. v. US Polymers-Accurez LLC*, 2017 WL 2693500, at * 2 (E.D. Mo. June 21, 2017) (granting motion to compel and refusing to reconsider previous ruling that court lacked jurisdiction over an arbitrable request for injunctive relief); *RFD-TV, LLC v. MCC Mags., LLC*, 2010 WL 749732, at *3-5 (D. Neb. Mar. 1, 2010) (granting the defendant's motion to compel arbitration and denying the plaintiff's motion for temporary restraining order and preliminary injunction because the dispute was subject to an arbitration agreement); *Ravello Sols., LLC v. Speedbuilder Sys., LLC*, 2005 WL 8155705, at *5 (N.D. Ga. Nov. 9, 2005) (granting the defendants' motions to compel arbitration and denying the plaintiff's motion for temporary restraining order and preliminary injunction due to the arbitration agreement between the parties).

In compelling parties to arbitrate injunctive relief claims, many courts have acknowledged the AAA Rules permit an arbitrator to award interim measures, including injunctive relief, and the arbitrator, whom the parties opted to have adjudicate their dispute, is in a better position to evaluate the merits of plaintiff's claim. *Diabetic Care*, 2018 WL 3643550, at *3 ("[T]he Court would be required to examine whether the plaintiff has shown a likelihood of success on the merits of the claim. This would, of course, require examination of the contract and interpretation of the contract provisions – the very actions assigned by the parties' contract to the arbitrators."); *RFD-TV*, 2010 WL 749732, at *5 ("Though [plaintiff] has characterized its requested relief as a TRO and preliminary injunction, it is not preliminary to the Court's ultimate resolution of the merits. The merits are properly left to the arbitrators."); *Ravello*, 2005 WL 8155705, at *5 ("[T]he AAA permits . . . plaintiff [to] seek injunctive relief from the arbitrators, who are in a better position to evaluate the merits of plaintiff's claim and the potential harm resulting from defendants' actions."). As the Court in *Diabetic Care* aptly noted, "***Plaintiff's argument that this Court should somehow continue to exercise jurisdiction over the injunctive relief it requests simply makes no sense***." 2018 WL 3643550, at *3 (emphasis added).

### B.     AAA Rules 38(c) and 39(h) Do Not Save Plaintiff

Plaintiff might also point to AAA Commercial Arbitration Rules 38(c) and 39(h)—which both provide that "[a] request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate"—to argue this Court can entertain its Motion for TRO and Preliminary Injunction. But several federal district courts have squarely rejected this argument.[9]

---

[9] Defendant was unable to identify any Eighth Circuit precedent or cases from this Court addressing these specific AAA Rules.

11

In specifically examining AAA Rules 38(c) and 39(h), the court in *Mad Mobile, Inc. v. Meijer Great Lakes Ltd. P'ship* held:

> Both rules state that "[a] request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with" an agreement to arbitrate. But "incompatibility or waiver is not the issue in this case." Instead, the issue is the *arbitrability* of [plaintiff's] motion for a preliminary injunction, and neither rule cited by [plaintiff] purports to supersede AAA Commercial Rule 7(a)[10] or the parties' otherwise clear and unmistakable language expressing an unlimited and unqualified intent to submit "[a]ny controversy or claim"—which is broad enough to cover arbitrability issues—to arbitration. 2023 WL 9601660, at *2 (W.D. Mich. Nov. 15, 2023) (internal citations omitted).

The *Mad Mobile* court relied on a related federal district court case, *iGlobal Exports, LLC v. Shoemaker* that reached the same conclusion. Notably, the *iGlobal* court recognized that:

> [A]n injunctive remedy that would deprive an arbitration panel of the full span of its broad authority over the parties and over all arbitrable issues would be contrary to the purpose and limitations of the [Federal] Arbitration Act . . . By proceeding to a determination on [plaintiff's] Motion for Preliminary Injunction, the arbitrator would be deprived of the arbitrability determination that the parties clearly and unmistakably agreed to in the employment contract. 2022 WL 4257488, at *3 (D. Utah Sept. 15, 2022) (internal citations omitted) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 728 (10th Cir. 1988)).

Multiple other federal district courts have declined to rule on injunctive relief claims in favor of arbitration, despite the language of AAA Rules 38(c) and 39(h) (and its previous versions) and analogous rules in other arbitration rules of procedure, based on similar reasoning. *See e.g., Jiaxing Super Lighting Elec. Appliance Co. v. Lunera Lighting, Inc.*, 2018 WL 6199681, at *2 (N.D. Cal. Nov. 28, 2018) (declining to adjudicate requests for interim relief, notwithstanding a JAMS arbitration rule nearly identical to AAA Rules 38(c) and 39(h), because "once a court determines that all disputes are subject to arbitration pursuant to a binding arbitration clause, it is improper for a district court to grant preliminary relief where provisional relief is available from an arbitral tribunal."); *A & C Disc. Pharmacy, L.L.C. v. Caremark, L.L.C.*, 2016 WL 3476970, at

---

[10] AAA Rule 7 is discussed further below at Section III.

12

\*6 (N.D. Tex. June 27, 2016) (holding that "because the parties agreed to arbitrate arbitrability, the arbitrator, not the court, should rule on who has the primary power to decide whether [plaintiff's] request for preliminary injunctive relief is arbitrable."); *DHL Info. Servs. (Americas), Inc. v. Infinite Software Corp.*, 502 F. Supp. 2d 1082, 1083 (C.D. Cal. 2007) ("The Court declines to rush in where the arbitrator is free to tread. Since under the agreement of the parties, almost all their disputes are going to arbitration where interim relief is authorized, it is best not to carve out interim relief from the issues the arbitrator will decide.").

### C. The Arbitration Provision Survives Termination

Plaintiff also cannot argue that its purported termination of the Agreement, which Defendant refutes the effectiveness of, affected the applicability of the Agreement's arbitration provision. To the contrary, the Agreement explicitly provides that the arbitration clause in Section 16.4 survives termination or expiration of the Agreement. (Ex. A at § 11.4(b) ("The provisions of this Agreement requiring performance or fulfillment after the expiration or termination of this Agreement will survive the expiration or termination of this Agreement including…Article 16.")). Likewise, numerous authoritative cases have held that arbitration provisions survive termination of the contract. *See, e.g., Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243 (1977); *Litton Fin. Printing v. NLRB*, 501 U.S. 190 (1991); *Koch v. Compucredit Corp.*, 543 F.3d 460, 466 (8th Cir. 2008) (quoting *Zucker v. After Six, Inc.*, 174 Fed.Appx. 944, 947 (6th Cir. 2006)).

### III. The Arbitrator Must Decide Any Genuine Arbitrability Question

Defendant has demonstrated that no real dispute exists concerning the arbitrability of Plaintiff's claims. But even if Plaintiff was able to make a colorable argument against arbitration, which it cannot, the arbitrator is the proper adjudicator of any such genuine arbitrability question.

13

Parties may contract for the issue of arbitrability to be decided in the arbitral forum. *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("[T]he arbitration provision's incorporation of the AAA Rules…constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *see also* E*xpress Scripts, Inc. v. Aegon Direct Mktg. Services, Inc.*, 2009 WL 1011478, at *3 (E.D. Mo. Apr. 15, 2009) ([T]he parties' incorporation of the AAA Rules into an arbitration agreement provides clear and unmistakable evidence…that the parties intended to leave the question of arbitrability to the arbitrator, not the court."); *Kane Int'l*, 2017 WL 2693500, at * 2 (holding that "[a]lthough the parties disagree regarding the scope of the arbitration provision and their dispute, that disagreement is for the arbitrator to resolve.").[11]

Here, the parties' arbitration agreement provides that the question of arbitrability will be resolved by the AAA when they specified the AAA as the arbitration forum. Pursuant to Rule 1(a) of the AAA's Commercial Arbitration Rules,[12] the parties are "deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association." Meanwhile, Rule 7 of the AAA Commercial Arbitration Rules provides that disputes regarding the jurisdiction of the arbitrator shall be resolved in arbitration.[13]

In sum, the AAA Rules support the relevant cases holding that an agreement by the parties to arbitrate disputes under the AAA necessarily includes an agreement by the parties to have the issue of arbitrability decided in arbitration. Accordingly, any genuine defense Plaintiff has relative

---

[11] *See* cases cited above in Section II.B. for further support.

[12] Although the arbitration agreement does not explicitly identify the AAA's Commercial Arbitration Rules as applicable, Rule 1 of the Commercial Arbitration Rules states the Commercial Arbitration Rules will apply if the relevant agreement merely provides for arbitration before the AAA without specifying particular rules, which is the case here. (*See* Ex. A at § 16.4).

[13] For example, AAA Rule 7(a) provides the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," while Rule 7(b) provides that the "arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part."

to the jurisdiction of the arbitrator must be resolved in arbitration. And, critically, Plaintiff has waived its right to challenge AAA as the proper forum for "all disputes" related to the Agreement. (Ex. A at § 16.4) ("No party to this agreement will challenge the jurisdiction or venue provisions as provided in this section.").

## IV.     Dismissal Is Warranted

A dismissal, as opposed to a stay, is appropriate based on compelling authority. In *Diabetic Care*, the Court dismissed the case when it compelled arbitration: "Because all the issues raised in the Petition, including the request for injunctive relief, must be submitted to arbitration, dismissal of the case, rather than a stay, is appropriate." 2018 WL 3643550, at *3. The same reasoning holds true here. This entire dispute, including all of Plaintiff's claims, are subject to arbitration. Therefore, "no purpose would be served by staying the case, and dismissal is appropriate so that the parties may proceed with arbitration." *Randazzo v. Anchen Pharmaceuticals, Inc.*, 2012 WL 5051023, at *8 (E.D. Mo. Oct. 18, 2012).

WHEREFORE, Defendant JWKJ Technologies, LLC respectfully requests that the Court grant its Motion to Dismiss and Compel Arbitration (dismissing Plaintiff's Complaint in its entirety), decline to hear and/or dismiss Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction and Expedited Discovery, and grant such other and further relief as the Court deems just and proper.

Dated:  July 15, 2024

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Rachel M. Milazzo*
    Rachel M. Milazzo, #59624MO
    Jacob W. Thessen, #67114MO
    Hanley Corporate Tower
    101 S. Hanley, Suite 600
    St. Louis, MO 63105
    Telephone: (314) 241-1800
    Facsimile: (314) 259-5959
    rachel.milazzo@dentons.com
    jake.thessen@dentons.com

*Attorneys for Defendant JWKJ Technologies LLC*