# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BITMAN TECHNOLOGIES GEORGIA LIMITED, )<br><br>Plaintiff, )<br><br>v. )<br><br>JWKJ TECHNOLOGIES LLC, )<br><br>Defendant. ) | No. 4:24CV927 HEA |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss and Compel Arbitration, [Doc. No. 13]. Plaintiff opposes the Motion. For the reasons that follow, the Court grants Defendant's motion.

### Facts and Background[1]

Plaintiff filed a "Complaint for Temporary Restraining Order Preliminary Injunction, Declaratory Judgment, and Damages" wherein Plaintiff alleges Defendant refuses to return approximately $15 million worth of Plaintiff's property Defendant has no right to hold. According to the Complaint, in 2023, Bitmain

---

[1] The recitation of facts is taken from Plaintiff's Complaint and is set forth for the purposes of this motion only and in no way relieves the parties of the necessary proof thereof in later proceedings.

engaged JWKJ to operate a data center hosting 6,000 of Bitmain bitcoin mining servers (the "Hosted Servers"), specialized electronic devices used to generate revenue for Bitmain by validating bitcoin transactions.  JWKJ was to provide a facility suitable to house the Hosted Servers, which require constant access to electrical power and the internet to operate. Bitmain expected to receive the rewards from any bitcoin that the Hosted Servers successfully mined, and in return, Bitmain paid JWKJ a hosting fee.

Bitmain operated the Hosted Servers at JWKJ's facility until June 2024, when JWKJ abruptly locked Bitmain personnel out of the Data Center Facility, which Plaintiff claims was a breach of Defendant's obligations under the Service Framework Agreement (the "SFA") that governs the relationship between Bitmain and JWKJ.

From February 2024 to June 2024, JWKJ did not maintain stable electric power and internet access sufficient to allow Bitmain to use the Hosted Servers to mine bitcoin, in violation of the SFA. Bitmain has reason to believe that on June 16, 2024, JWKJ manipulated the Hosted Servers so that their computational power was directed toward a mining pool with rewards for JWKJ, not the mining pool as designated by Bitmain for which JWKJ was contractually obligated to direct the Hosted Servers. This caused JWKJ to reap the rewards of the Hosted Servers' work, which it continues to do today.

Plaintiff claims JWKJ has stolen more than 5.59 bitcoin from Bitmain through this scheme, worth approximately $356,882.69 at the time of the theft, and JWKJ continues to steal approximately 0.37 bitcoin every day the Hosted Servers are on-line and directed toward mining pool as designated by JWKJ.

On June 20, 2024, Bitmain terminated the agreement and demanded that JWKJ allow Bitmain to enter the Data Center Facility to retrieve its property, as is its right under the SFA. JWKJ refuses and is unlawfully detaining Bitmain's property worth approximately $15 million at the Data Center Facility all the while using Bitmain's property to enrich itself.

Plaintiff's Complaint alleges five claims: declaratory judgment, (Count I); breach of contract, (Count II); conversion, (Count III); tampering with computer data, in violation of Mo.Rev.Stat § 569.095, *et seq.*(Count IV); and violation of the Missouri Uniform Trade Secrets Act, MoRev.Stat. § 417.450, *et seq.* (Count V).

In response to the Complaint, Defendant filed its Motion to Dismiss and Compel Arbitration, the motion presently before the Court.

In its motion, Defendant argues that the SFA requires Plaintiff's claim to be arbitrated. The SFA provides, in relevant part:

> Dispute Resolution. All disputes arising under this Agreement shall be submitted to arbitration in Houston, Texas before a single arbitrator of the American Arbitration Association ("AAA"). The arbitrator shall be selected by application of the rules of the AAA, or by mutual agreement of the parties, except that such arbitrator shall be an attorney admitted to practice law in the Relevant Jurisdiction. No party to this agreement will challenge

3

the jurisdiction or venue provisions as provided in this section. Nothing contained herein shall prevent the party from obtaining an injunction. The breaching Party shall bear the attorney fees and arbitration fees of the non-breaching Party. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

Article 16.4.

The SFA further provides,

Service Provider acknowledge [sic] that a breach or threatened breach of this Agreement shall cause serious and irreparable harm to BITMAIN for which monetary damages alone would not be a sufficient remedy. Accordingly, Service Provider agrees that in the event of a breach or threatened breach by the Service Provider, BITMAIN shall be entitled to injunctive relief and specific performance in addition to any other remedy available to BITMAIN in equity or at law without the necessity of obtaining any form of bond or undertaking whatsoever, and Service Provider hereby waives any claim or defense that damages may be adequate or ascertainable or otherwise preclude injunctive relief.

Article 13.1.

The crux of the dispute is whether the SFA allows Plaintiff to file an action in this Court for injunctive relief or seek relief in arbitration.

**Legal Standard**

A motion to compel arbitration is properly analyzed under Fed. R. Civ. P. 12(b)(6), the motion to dismiss standard, or Fed. R. Civ. P. 56, the summary judgment standard. *City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867

4

F.3d 875, 881 (8th Cir. 2017). If a party presents evidence outside the pleadings, which is not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56. *Id.* at 882. Here, both sides have submitted evidence in support of their positions, therefore, the Court will apply the summary judgment standard under Rule 56. *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022). Summary judgment is proper if, viewing the record in the light most favorable to the nonmovant, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to [relief] as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (internal quotation marks omitted). Defendant bears the burden to prove a valid arbitration agreement exists, as it is seeking to compel arbitration in this case. *Id.*

## Discussion

The Federal Arbitration Act ("FAA") applies to contracts evidencing transactions "involving commerce." 9 U.S.C. § 2; *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). The FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

5

9 U.S.C. § 2. The Supreme Court has interpreted this provision broadly as exercising the full scope of Congress's commerce-clause power. *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995). The Court finds the statute applies to the instant circumstance.

> Under the FAA:
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011). "[C]ourts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Id.* "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). Therefore, when there is an enforceable agreement to arbitrate, federal courts "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4.

6

The Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). *See also Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021). The parties do not dispute the existence and validity of the SFA, rather, the parties dispute whether Plaintiff's claim for injunctive relief must be arbitrated.

Agreements to arbitrate are "'a matter of contract,' meaning that disputes are arbitrable only to the extent an agreement between the parties says so." *Foster*, 15 F.4th at 862 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Because arbitration agreements are a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (*quoting Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)) (internal marks omitted).

Article 16.4 provides <u>all</u> disputes arising out of the SFA are subject to arbitration. Rather than carving out injunctive relief, the SFA specifically includes injunctions in the arbitration provision. Article 16.4's express inclusion of injunctive relief is indicative of the parties' intent to include injunctive relief in the arbitration of all disputes.

7

Plaintiff argues Article 13.1 gives rise to a right to bring a claim for injunction outside the realm of arbitration. To the contrary, Article 13.1 simply acknowledges monetary damages may be insufficient to remedy a breach of the agreement and recognizes the availability of equitable remedies. Indeed, this provision reenforces the applicability of injunctive relief that falls within the purview of arbitration. Nothing set out in Article 13.1 implicates another avenue for litigating injunctive relief.

Considering the SFA in its entirety, it is clear the parties intended all disputes, including those involving equitable remedies, which arise under the SFA. Even so, if Plaintiff perceives the two provisions create an ambiguity, as previously noted, ambiguities in arbitration agreements are resolved in favor of arbitration.

In determining arbitrability, federal policy favors arbitration such that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bank of Am., N.A. v. UMB Fin. Servs.*, 618 F.3d 906, 911 (8th Cir. 2010)(quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)); see also *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198-99 (8th Cir. 2008). Under the FAA, ambiguities must be resolved in favor of arbitration unless the court "can say with positive assurance that the arbitration clause does not cover the instant dispute." *ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors*, 133 F.3d 664, 670 (8th Cir. 1998).

The FAA requires a federal district court to stay an action pending an arbitration, rather than to dismiss it. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011). Therefore, the Court will stay these proceedings as to Plaintiff's claims against Defendant pending the outcome of arbitration.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration is granted.

**IT IS FURTHER ORDERED** that this matter will be stayed pending arbitration of Plaintiff's claims.

**IT IS FURTHER ORDERED** that the parties shall provide a status report regarding the arbitration process within 90 days of the date of this order.

Dated this 8th day of August, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE